# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | Case No. 1:16CR00041-005 |
| ) | |
| v.  ) | **OPINION AND ORDER** |
| ) | |
| **KEVIN THOMAS SEIGLER,** ) | By: James P. Jones |
| ) | United States District Judge |
| ) | |
| Defendant. ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Samuel E. White, Tri-Cities Law Firm, Kingsport, Tennessee, for Defendant.*

The defendant is charged by Indictment with conspiracy to distribute controlled substances. Anticipating that the government's evidence will include recordings of telephone conversations obtained by a wiretap between him and an alleged coconspirator, he has moved to suppress such evidence and requested an evidentiary hearing. The government has responded, objecting to the timeliness of the motion. I find that that the government's objection is well-founded and that in any event, the motion to suppress is insufficient to require a hearing and must be denied.[1]

---

[1] The motion was orally denied prior to the beginning of the trial and this opinion elaborates on the reasons therefor.

I.

The Indictment was returned against Seigler and other defendants on November 29, 2016. Counsel was appointed for Seigler and he was released on bond. By order entered January 5, 2017, the court directed that pursuant to Rule 12(c)(1) pretrial motions be filed at least 14 days prior to the pretrial conference. The defendant jumped his bond and did not appear for the trial on May 1, 2017. He was eventually apprehended on March 22, 2018, detained, and his trial reset for August 6, 2018. Present retained counsel for Seigler entered his appearance on July 3, 2018, and at his request, the trial was continued. The trial was later scheduled to begin on January 28, 2019, and the pretrial conference scheduled for January 14, 2019. The pretrial conference was held as scheduled. No motions were filed in advance of the pretrial conference or taken up at that time. On January 16, 2019, the defendant filed two motions — a Motion to Allow Consideration of Motion to Suppress Wiretap Evidence and a Motion to Suppress Wiretap Evidence.

The defendant contends that the court should permit the late filing of the motion to suppress for good cause. Pursuant to Rule 45(b)(1)(B) such a request — made after the time has expired — requires a showing of excusable neglect. *United States v. Chujoy*, 207 F. Supp. 3d 660, 664 (W.D. Va. 2016). The Fourth Circuit has noted that "[e]xcusable neglect generally has the same meaning

throughout the federal procedural rules." *Martinez v. United States,* 578 F. App'x 192, 194 n.\* (4th Cir. 2014) (unpublished). The Supreme Court set forth factors to evaluate excusable neglect in the bankruptcy context in *Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 395 (1993), and implicitly extended these factors to criminal cases in *Stutson v. United States,* 516 U.S. 193, 196–97 (1996).

The determination of whether a late-filed motion was the result of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'' *Pioneer,* 507 U.S. at 395. However, "'a party that fails to act with diligence will be unable to establish that [his] conduct constituted excusable neglect.''' *Martinez,* 578 F. App'x at 194 (quoting *Robinson v. Wix Filtration Corp.,* 599 F.3d 403, 413 (4th Cir. 2010)). In this inquiry, courts have articulated five factors to consider: (1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; (4) whether the delay was within the reasonable control of the moving party; and (5) whether the late-filing party acted in good faith. *United States v. Munoz,* 605 F.3d 359, 368 (6th Cir. 2010). The "factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While [the others] might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry." *Id.* at 372

(internal quotation marks and citations omitted); *see also Thompson v. E.I. DuPont de Nemours & Co.,* 76 F.3d 530, 534 (4th Cir.1996) ("The most important of the factors identified in *Pioneer* for determining whether 'neglect' is 'excusable' is the reason for the [delay].").

I agree with the government that it would be prejudiced by having to defend at an evidentiary hearing at a late date prior to trial. Moreover, the interests of justice support a denial of any further delay of this long-standing prosecution in order to hear and decide the motion to suppress. Most importantly, no excuse has been given for the failure to file a timely motion, and none is apparent. Present counsel has represented Seigler for over six months and information about the wiretaps has been known at least since the trial of Seigler's codefendants in November of 2017.

## II.

In any event, regardless of the untimeliness of the motion to suppress, I find that it must be denied.

A party to communications intercepted by a wiretap may move to suppress if the communications were unlawfully intercepted. Communications may be unlawfully intercepted if, among other things, the affidavit in support of the wiretap application contains deliberate and reckless falsehoods without which the application would be insufficient for the wiretap, or if it contains mere boilerplate

recitations of the difficulties of gathering usable evidence through other means. The interception may also be unlawful if the government failed to minimize interception of nonpertinent communications. Although Seigler argues that all of these issues are present in this case, his motion is insufficient for the reasons discussed below.

Any aggrieved person in a trial or other proceeding before a court may move to suppress the contents of any intercepted wire communication, or any evidence derived therefrom, on the grounds that (1) the communication was unlawfully intercepted, (2) the order of authorization or approval under which it was intercepted is insufficient on its face, or (3) the interception was not made in conformity with the order of authorization or approval. 18 U.S.C. § 2518(10)(a). The term "aggrieved person" includes a person who was a party to an intercepted wire communication even if they were not the person against whom the interception was directed. *See* 18 U.S.C. § 2510(11).

Here, Seigler seeks to suppress the contents of, and evidence derived from, intercepted wire communications because he alleges that the communications were unlawfully intercepted. He first argues that the interception was unlawful because the state's wiretap application did not adequately explain why other investigative procedures were inadequate, as required by 18 U.S.C. § 2518(1)(c). Seigler contends that the explanation was inadequate because the affidavit supporting the

application contained false and misleading statements and boilerplate explanations regarding other investigative procedures. He also argues that the interception was unlawful because the state did not minimize interception of conversations that he alleges were not relevant to the wiretap order.

A.

Seigler's argument that there are false and misleading statements in the affidavit supporting the wiretap application is insufficient grounds to suppress the wiretap evidence because he has not made a preliminary showing that the false statements were included knowingly and intentionally or with reckless disregard for the truth, or that they are in fact false.

The Supreme Court's framework for addressing allegations of false information in affidavits supporting search warrants in *Franks v. Delaware*, 438 U.S. 154 (1978), also applies to affidavits supporting wiretap applications. *See United States v. Hawkins*, 788 F.2d 200, 203–04 (4th Cir. 1986) (affirming the district court's application of *Franks* to a wiretap affidavit). In *Franks*, the Court stated:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be

>accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

438 U.S. at 171 (footnote omitted).

Here, Seigler asserts that the affidavit contains three false and misleading statements — that the conspiracy is tied to an established Hispanic community, that individuals interviewed by investigators were reluctant to speak with law enforcement because they were afraid their family members in Mexico would be harmed, and that only one confidential informant was used in the investigation. Seigler's allegation that these statements were included deliberately and with reckless disregard for the truth is conclusory and lacks proof. In addition, his proof that the statements are false is insufficient under *Franks*. He offers no affidavits and instead makes unsupported assertions that none of the residences in the case are in Hispanic neighborhoods and no one interviewed in the investigation is known to have family members in Mexico. He also states that the probable cause affidavit notes that at least nineteen confidential informants were used in the investigation, but that statement does not appear in the affidavit. Thus, his

-7-

allegations are insufficient to require setting aside the statements at issue and considering the affidavit without them.

B.

Seigler's argument that the affidavit contains nothing more than boilerplate language regarding the inadequacy of other investigative techniques is likely insufficient grounds to suppress the wiretap evidence because the affidavit describes the case at hand in addition to the general difficulties of gathering usable evidence in drug conspiracy cases.

An application for a wiretap must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).  The government's burden of showing the inadequacy of other investigative techniques "is not great, and the adequacy of such a showing is to be tested in a practical and commonsense fashion."  *United States v. Smith*, 31 F.3d 1294, 1297 (4th Cir. 1994) (internal quotation marks and citation omitted). The government may not meet its burden through a "mere boilerplate recitation of the difficulties of gathering usable evidence."  *United States v. Oriakhi*, 57 F.3d 1290, 1298 (4th Cir. 1995) (internal quotation marks and citation omitted). Instead, the government must base its application on real facts and must "specifically describe how, in the case at hand, it has encountered difficulties in

penetrating [the] criminal enterprise or in gathering evidence with normal techniques." *Id.* (internal quotation marks and citation omitted).

Seigler argues that all of the government's statements regarding other investigative procedures are mere boilerplate. However, the affidavit contains descriptions of procedures used in this case in particular, along with facts specific to this case. The affidavit states that search warrants are unlikely to be successful because it is unclear where all of the target's properties are located, and then it describes general characteristics of drug traffickers' residences making it difficult to execute search warrants on them. It states that physical surveillance had been attempted in the investigation, but it had not succeeded in gathering sufficient evidence of the activity under investigation. The affidavit also states that an undercover agent had been used in the investigation but was not able to infiltrate the enterprise at a high enough level due to limited knowledge of it. Further, the affidavit states that pen register and trap and trace devices had been used in the investigation, but they were insufficient to identify the identities of parties. Lastly, the affidavit states that individuals that have been interviewed by investigators have been reluctant to speak because of fear that their families in Mexico will be harmed in retaliation. The affiant asserts that this makes arrests and subsequent interviews and finding other informants insufficient procedures for gathering evidence. Thus, although the affidavit contains many general statements about the

difficulties of gathering evidence in drug conspiracy cases, it also contains statements and facts specific to this case.

C.

Lastly, Seigler's argument that the interception was unlawful because the government did not comply with the statute's minimization requirement when it interpreted "my man" and "3 dollars extra" to be pertinent communications likely fails because this interpretation does not amount to a failure to minimize.

Wiretaps must "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). "Minimization requires that the government adopt reasonable measures to reduce to a practical minimum the interception of conversations unrelated to the criminal activity under investigation while permitting the government to pursue legitimate investigation." *United States v. Rivera*, 527 F.3d 891, 904 (9th Cir. 2008) (citation omitted). Whether the government has complied with the minimization requirement will depend on the facts and circumstances of the case. *Scott v. United States*, 436 U.S. 128, 140 (1978). "[W]here . . . the investigation is of an organized criminal conspiracy conversing in a colloquial code, surveillance of most of the telephone calls made during several days does not constitute a failure to minimize . . . ." *United States v. Ceruti*, Criminal Action No. 10-00320-12-CR-W-DGK, 2012 WL 4959443, at * 6 (W.D. Mo. Oct. 9, 2012).

Seigler's argument regarding the government's interpretation of "my man" and "3 dollars extra" copies the language that the defendant in *Ceruti* used to challenge the government's interpretation of "it" as drug related.  Both defendants asserted that "the alleged illicit activity is an unsupported assumption and no expert was used to interpret these so-called code words.  The government failed to meet the requirements of the statute in this regard." *Id.* at *5; Mem. Supp. Def.'s Mot. to Suppress Wiretap Evid. 8, ECF. No. 1122.  In *Ceruti*, the court found that this argument was not related to minimization and did not form the basis for a motion to suppress, and instead it was an argument more appropriately made to the jury during trial.  2012 WL 4959443, at * 5.  The same is true in this case.  The investigators' determination that "my man" and "3 dollars extra" are code words for drug activity, and thus the communication is relevant, likely does not constitute a failure to minimize interception of non-relevant communications as a whole.

III.

For these reasons, the defendant's motions (ECF Nos. 1120, 1121) are DENIED.

It is so **ORDERED**.

ENTER: January 29, 2019

/s/ James P. Jones
United States District Judge