# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:16CR00041-005 |
| v. | **OPINION AND ORDER** |
| **KEVIN THOMAS SEIGLER,** | By: James P. Jones |
| Defendant. | United States District Judge |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Samuel E. White, Tri-Cities Law Firm, Kingsport, Tennessee, for Defendant.*

A jury convicted the defendant, Kevin Thomas Seigler, of conspiring to distribute methamphetamine and use a communication facility to facilitate a drug trafficking offense. The defendant has filed a Renewed Motion for Acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the evidence at trial was insufficient to show that he knowingly joined the charged conspiracy. Seigler, who sold a large quantity of methamphetamine in Nevada to a coconspirator, contends that the evidence did not show that he had specific knowledge that the methamphetamine was further distributed to Virginia. For the reasons that follow, I will deny the defendant's motion.

I.

The following facts are presented in the light most favorable to the government.

In 2011 or 2012, Bradley Chapman began helping his father-in-law, Richard Kayian, distribute oxycodone and methamphetamine in and around Abingdon and Glade Spring, Virginia. Chapman testified that Kayian, who had lived in Las Vegas, Nevada, coordinated the shipping of packages of oxycodone and methamphetamine from Las Vegas to Chapman, Brandon Stone, and Tracy Callihan, in Virginia. Chapman, Stone, and others would then sell the drugs in Virginia. Chapman would send the proceeds from the drug sales to Kayian and another individual in Las Vegas, Steven Cino.

Agents working for the Drug Enforcement Agency ("DEA") in the Western District of Virginia notified the Las Vegas Police Department ("LVPD") that Cino may be involved in drug distribution. The DEA and the LVPD began surveilling Cino's phone conversations. On March 8, 2016, the LVPD intercepted a phone call from Callihan to Cino, in which Callihan told Cino that money was coming and he wanted "two." On the same day, the LVPD intercepted a phone call from Cino to Seigler, in which Cino requested "two" and to meet Seigler the next day. On March 9, 2016, the LVPD begain surveiling Cino. They observed him enter Seigler's home in Las Vegas and later leave with a bag that he put in the trunk of

his vehicle. Officers stopped Cino's vehicle and found approximately two pounds of methamphetamine in the bag in the trunk. A search warrant was obtained for Seigler's home, in which officers found over $19,000, and items typically used for drug distribution, including digital scales and bags. Seigler was arrested and charged in this court with the conspiracy now at issue.

At the conclusion of the government's case in chief, Seigler moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the evidence was insufficient to show that he knowingly joined the charged conspiracy. I denied the motion, and the jury found the defendant guilty. Thereafter, Seigler filed the present motion, which has been briefed and is ripe for decision.[1]

II.

On review of a motion for a judgment of acquittal under Rule 29, the court "must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." *Burks v. United States*, 437 U.S. 1, 17 (1978). In the context of a criminal conviction, substantial evidence is evidence that "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable

---

[1] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

doubt." *United States v. Newsome*, 322 F.3d 328, 333 (4th Cir. 2003).[2] The court should consider "circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

Here, Seigler contends that the evidence at trial was insufficient to convict him of the charged conspiracy because it did not show that he had specific knowledge that the methamphetamine at issue was ultimately being distributed to Virginia. According to Seigler, knowledge of this fact "goes to the essence of the conspiracy," Renewed Mot. for Acquittal ¶ 7, and without it, he could not have knowingly joined the conspiracy.[3]

To establish a conspiracy, the government must prove that at some time during the dates charged, two or more persons entered into an agreement or understanding with the purpose of undertaking the prohibited conduct, and the defendant voluntarily joined the conspiracy knowing its purpose and intending to help accomplish that purpose. *United States v. Mills*, 995 F.2d 480, 483 (4th Cir. 1993).

---

[2] I have omitted internal quotation marks, citations, and alterations throughout this opinion, unless otherwise noted.

[3] In his original oral motion for judgment of acquittal at trial, the defendant expressly disclaimed any attack on the venue of this prosecution. He simply argued, as he does again, that there was insufficient evidence that he was part of the conspiracy charged.

The Fourth Circuit's holding regarding the government's evidentiary burden in conspiracy cases set forth in *United States v. Garcia*, Nos. 94-5117, 94-5118, 94-5119, 1996 WL 55992 (4th Cir. Feb. 9, 1996) (unpublished), is instructive in this case. In *Garcia*, the defendant argued that although the evidence may have shown that he was involved in small drug transactions in Florida, a rational jury could not find that he voluntarily joined the charged conspiracy to transport drugs to Virginia and Ohio. 1996 WL 55992, at *13. In response to this argument, the court stated:

> We disagree with Garcia's characterization of the Government's evidentiary burden in his case. Again, we reiterate that specific knowledge of the drug's ultimate destination is not an element of the crime of conspiracy. The Government thus was not required to show that Garcia intended the cocaine that he sold in Naples to be transported to Virginia and Ohio. Rather, the Government showed that Garcia voluntarily participated in the conspiracy even if he was unaware of the location of the ultimate consumer market. Moreover, as we have observed, members of a single conspiracy do not always know its full scope. The indictment's reference to the resale of the cocaine in Virginia simply established a proper venue for the trial; it did not add an element to the offense of conspiracy.

*Id.* Moreover, the government's evidence had shown that the Florida distribution network with which the defendant had been associated had in fact distributed drugs to Virginia. In light of this, the court stated, "[o]nce the Government established the existence of the conspiracy, all that was required to convict Garcia was proof of a slight connection between Garcia and the conspiracy." *Id.*

Likewise, other courts have found the evidence sufficient to convict defendants of the conspiracies charged against them, even when the defendants had no knowledge of remote links in the conspiracies. *E.g.*, *United States v. Donnell*, 596 F.3d 913 (8th Cir. 2010). In *Donnell*, the court found that the evidence was sufficient to show that the defendant was a member of a "chain conspiracy." *Id.* at 924. The court said of a chain conspiracy:

> [I]n the typical drug distribution conspiracy you may find a manufacturer who produces the product; a supplier who buys the contraband from the producer; [and] distributors who buy from the supplier and sell to smaller dealers or users. . . . Whatever the product, the purpose of the conspiracy is to put the commodity into the hands of the ultimate consumer. The success of the group as a whole is dependent upon the ability of each member to fulfill his responsibilities. Thus, . . . the defendants' knowledge of the existence of remote links in the chain may be inferred solely from the nature of the enterprise.

*Id.* (quoting *United States v. Rosnow*, 977 F.2d 399, 406 (8th Cir. 1992)).

The facts and arguments in this case mirror those in *Garcia* and *Donnell*. Although the evidence did not show that Seigler knew that the drugs he sold to Cino were being distributed in Virginia, "specific knowledge of the drug's ultimate destination is not an element of the crime of conspiracy." *Garcia*, 1996 WL 55992, at *13. Rather, "all that was required to convict [Seigler] was proof of a slight connection between [him] and the conspiracy." *Id.* The evidence was sufficient to make this showing. It showed that Seigler supplied distribution quantities of drugs to Cino, who coordinated their shipment to Kayian and Callihan

in Virginia, where they were then sold.  Thus, it showed that Seigler was a supplier in a chain conspiracy, the purpose of which was to put drugs from Nevada in the hands of ultimate consumers in Virginia.  Accordingly, the evidence was sufficient to convict Seigler of the charged conspiracy.

III.

For the foregoing reasons, it is **ORDERED** that the defendant's Renewed Motion for Acquittal, ECF No. 1143, is DENIED.

        ENTER:  March 28, 2019

        /s/  *James P. Jones*
        United States District Judge